**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TIMOTHY BOWMAN and
BOWMAN'S GUN SHOP, LLC,

Plaintiffs,

-v- 8:25-CV-1387 (AJB/DJS)

LETITIA JAMES *et al.*,

Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

# DECISION and ORDER

## I. INTRODUCTION

On October 6, 2025, Timothy Bowman ("Bowman") and Bowman's Gun Shop, LLC (the "Gun Shop") (collectively "plaintiffs") filed this civil rights action against New York State Attorney General Letitia James ("AG James"), the Office of the New York Attorney General ("OAG"), the Division of New York State Police ("NYSP"), and NYSP Superintendent Steven James (the "NYSP Superintendent") (collectively "defendants"). *See* Dkt. No. 1 ("Compl.").

Plaintiffs' 173-page complaint asserts claims under 42 U.S.C. § 1983 for alleged violations of the First, Second, and Fourteenth Amendments, as well as a state-law claim for libel *per se*. Specifically, plaintiffs allege that defendants subjected Bowman and the Gun Shop to unlawful investigation and enforcement activity concerning their compliance with New York's firearms laws, and that defendants issued a press release containing false and defamatory statements about Bowman and the Gun Shop. *See* Compl. Plaintiffs further allege that defendants' conduct

infringed Bowman's First Amendment right to speak about firearms, threatened his ability to exercise his Second Amendment rights, and deprived plaintiffs of procedural due process. *See id.*

This federal action is the latest in a series of related proceedings concerning Bowman and the Gun Shop. On November 12, 2024, the Gun Shop commenced an action against AG James in New York Supreme Court, St. Lawrence County. *See* Compl. ¶¶ 207 & n.62, 288; *Bowman's Gun Shop, LLC v. James*, Index No. EFCV-24-167057 (Sup. Ct. St. Lawrence Cnty.) ("*Bowman I*"). In *Bowman I*, the Gun Shop challenged the OAG's investigation and enforcement activity. *See Bowman I*, Dkt. No. 1.

On July 18, 2025, the OAG commenced a separate civil enforcement proceeding against Bowman and the Gun Shop in New York Supreme Court, St. Lawrence County, pursuant to New York Executive Law § 63(12). Compl. ¶¶ 121–33 & n.45; *People v. Bowman's Gun Shop, LLC*, Index No. EFCV-25-168235 (Sup. Ct. St. Lawrence Cnty.) ("*Bowman II*"). In *Bowman II*, the OAG alleges that plaintiffs violated provisions of New York's General Business Law ("GBL") §§ 875 and 898, which regulate certain aspects of the sale of firearms. *See Bowman II*, Dkt. No. 1.

On August 21, 2025, plaintiffs removed *Bowman II* to this Court. *See People of the State of N.Y. v. Bowman's Gun Shop, LLC et al.*, No. 8:25-cv-1131 (N.D.N.Y. filed Aug. 21, 2025). Thereafter, on the OAG's motion, the Court remanded the proceeding to state court, concluding that "the 'fact-bound and situation-specific' nature of Bowman's objections to the underlying civil proceeding—at least, once the allegations in his notice of removal are stripped of their sensationalist framing—clearly indicate that the exercise of federal-question jurisdiction would be inappropriate." *People v. Bowman's Gun Shop, LLC*, 821 F. Supp. 3d 244, 257–58 (N.D.N.Y. 2026). *Bowman II* is now pending in New York Supreme Court, St. Lawrence County. *See Bowman II*, Dkt. No. 98.

However, while the motion to remand *Bowman II* was pending, plaintiffs commenced this new federal civil rights action. On March 11, 2026, defendants moved under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint. Dkt. No. 24. Among other things, defendants argue that the Court should abstain in favor of the pending state-court enforcement proceeding, that plaintiffs lack standing, that sovereign and qualified immunity bar certain claims, and that plaintiffs have failed to plausibly allege violations of the First, Second, or Fourteenth Amendments or a viable state-law defamation claim. *See* Dkt. No. 24-1. Plaintiffs oppose the motion, Dkt. No. 36-2, which has been fully briefed, Dkt. No. 37, and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

The following facts are taken from plaintiffs' 173-page, 773-paragraph complaint, Dkt. No. 1, and are assumed true for the purpose of assessing the motion to dismiss.

Bowman is a resident of St. Lawrence County, New York, and the president and sole owner of the Gun Shop. Compl. ¶¶ 2–4, 14. The Gun Shop is a New York single-member limited liability company that operates a retail firearms business in Gouverneur, New York. *Id.* ¶¶ 14–19. The business has been federally licensed to sell firearms since 2013 and has held New York licenses as a "Dealer in Firearms" and a "Gunsmith" since 2015. *Id.* ¶¶ 20–27. Bowman, himself, holds a New York concealed carry license. *Id.* ¶ 8.

This action arises from defendants' enforcement activities concerning Bowman and his business and from a July 18, 2025, press release issued by the OAG concerning those activities. *See* Compl. ¶¶ 121–33.

In October 2023, Bowman received a telephone call from an individual identifying himself as an NYSP officer who stated that he wanted to deliver educational materials concerning certain

"new laws" to the Gun Shop. Compl. ¶ 427. Bowman told the officer that he would be out of state at that time and requested that the officer return when Bowman was available. *Id.* ¶¶ 428–29. Nevertheless, three NYSP officers later visited the store while Bowman was absent and spoke with his son, Tyler Bowman, who is neither an owner nor an employee. *Id.* ¶¶ 433–40. The NYSP officers provided the younger Bowman with a blank compliance checklist and materials concerning the new laws but did not walk through or otherwise inspect the interior or exterior of the premises. *Id.* ¶¶ 440–45. Bowman alleges that he thereafter received no notice from NYSP identifying any deficiency, violation, or required corrective action stemming from the visit. *Id.* ¶ 463.

In March 2024, Assistant Attorney General Martha Grieco ("AAG Grieco") sent Bowman two subpoenas and a proposed stipulation concerning compliance with GBL § 875, which, since its enactment by the New York State Legislature in 2022, has imposed various requirements on firearms dealers. *See* Compl. ¶¶ 52–58, 77–100, 482–85. The subpoenas did not indicate that either Bowman or the Gun Shop was the subject of an investigation. *Id.* ¶¶ 484–89.

Over the following months, Bowman communicated with AAG Grieco by telephone, e-mail, and text and, on June 10, 2024, he traveled to Albany, New York, to meet with her. Compl. ¶¶ 487–508. According to Bowman, he did not understand before that meeting that he was himself the subject of an investigation or that he was facing the possibility of criminal charges. *Id.* ¶¶ 489–502, 497. The Albany meeting, which took place in a "formal setting," involved questioning under oath before several OAG attorneys and a stenographer. *Id.* ¶¶ 500–08. At this point in time, Bowman was not represented by counsel. *Id.* ¶¶ 490, 506.

On July 23, 2024, AAG Grieco e-mailed Bowman a proposed "Assurance" which identified the matter as an OAG investigation of Bowman and the Gun Shop and asserted that

plaintiffs had violated New York law. Compl. ¶¶ 511–19. The proposed Assurance required, among other things, that plaintiffs agree not to make public statements denying the investigation's findings or suggesting that those findings lacked a factual or legal basis. *Id.* ¶ 516. Bowman did not sign the Assurance. *Id.* ¶ 515.

About four months later, on November 12, 2024, the Gun Shop commenced *Bowman I* against AG James in New York Supreme Court, St. Lawrence County. *See* Compl. ¶¶ 207 & n.62, 288; *Bowman I*. On July 18, 2025, the OAG commenced a separate proceeding against Bowman and the Gun Shop in New York Supreme Court, St. Lawrence County, and issued a press release announcing the action. Compl. ¶¶ 121–33 & n.45; *Bowman II*; *see also* Dkt. No. 1-2.

The press release detailed four events: 2019 proceedings concerning Bowman's firearms licenses in St. Lawrence County Court, separate burglaries of the Gun Shop in 2019 and 2020, and the NYSP's October 2023 visit to the shop. Compl. ¶¶ 207–12. The press release stated that NYSP had "inspected Bowman's Gun Shop" in October 2023 and "concluded that it did not comply with legal safety requirements for gun stores." *Id.* ¶ 371. Plaintiffs dispute that characterization and allege that the press release contained numerous other false or misleading statements concerning Bowman's business and the events described in the press release. *See generally id.* ¶¶ 213–426.

Bowman alleges that he first learned of the July 18 press release when he received calls from members of the news media and that the OAG did not serve him with the papers filed in the New York Supreme Court proceeding until July 22, 2025. Compl. ¶¶ 123–30. Plaintiffs further allege that publication of the press release caused reputational and economic harm, including lost customers and revenue, and that it led members of the public to believe that the Gun Shop had been closed by state authorities. *Id.* ¶¶ 619–35.

This civil action followed.

## III. LEGAL STANDARDS

### A. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (internal citations omitted). And "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id.* (internal citations omitted).

### B. 12(b)(6)

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Defendants move to dismiss plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 24-1 ("Defs.' Mem."). As an initial matter, plaintiffs' 173-page, 773-paragraph complaint has made the Court's task in assessing this motion to dismiss unnecessarily difficult. Rather than providing the "short and plain statement" contemplated by Rule 8, the complaint intersperses factual allegations with legal argument, citations to statutes and judicial decisions, sensationalized characterizations of defendants' conduct, and even some anticipatory evidentiary objections. *See generally* Compl. The result is a pleading that often reads less like a complaint than a combination of a memorandum of law, motion *in limine*, and reply brief. *See, e.g.,* Compl. ¶¶ 207–426, 463–81.

This sort of pleading merely serves to obscure the precise injuries plaintiffs allegedly suffered. Rule 8 does not demand that a plaintiff plead legal theories with precision, but neither does it require the Court to rummage through hundreds of paragraphs of mixed factual narrative and advocacy to construct plaintiffs' claims. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[A short and plain statement] should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.").

Accordingly, in addressing the instant motion, the Court construes the complaint generously but declines to search for additional theories on plaintiffs' behalf. *See, e.g.*, *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment) ("Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.");

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 130 (2d Cir. 2012) (declining to address argument in the first instance on appeal where parties did not frame issue for district court).

**A. Article III Standing**

First, defendants argue that plaintiffs lack Article III standing to assert their First Amendment, Second Amendment, and libel *per se* claims because they have not alleged a concrete and particularized injury resulting from the challenged conduct. *See* Defs.' Mem. at 19–23. Plaintiffs respond that the complaint alleges several concrete injuries, including reputational harm, economic loss, and interference with Bowman's asserted First and Second Amendment rights. See Pls.' Opp. at 14–22. In particular, plaintiffs contend that the press release caused harm to Bowman's professional reputation and business, including lost customers and revenue, and that those injuries are sufficient to satisfy Article III's injury-in-fact requirement.

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish Article III standing, a plaintiff must demonstrate "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion LLC*, 594 U.S. at 423. Importantly, the standing inquiry is distinct from whether a plaintiff has stated a viable claim on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

Plaintiffs have adequately alleged an injury in fact sufficient to pursue their First Amendment claim. The complaint alleges that defendants' conduct, including publication of the challenged press release, caused Bowman and Bowman's Gun Shop reputational and economic

injuries, including lost customers and revenue. *See* Compl. ¶¶ 619–35. Both monetary and reputational harms are paradigmatic concrete injuries for purposes of Article III. *See TransUnion LLC*, 594 U.S. at 425 (recognizing "reputational harms" and "monetary harms" as concrete injuries); *Clementine Co. v. Adams,* 74 F.4th 77, 83 (2d Cir. 2023) (same).

Notably, in the First Amendment retaliation context, a plaintiff need not allege that the challenged conduct actually chilled his speech if he has suffered some other concrete harm. *See Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ("A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing."); *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (explaining that allegations of "loss of business or some other tangible injury" resulting from retaliatory government speech could constitute concrete harm). Thus, as to their First Amendment claim, plaintiffs have alleged an injury in fact sufficient for Article III standing purposes. Whether plaintiffs have plausibly alleged that those injuries resulted from retaliation for protected speech is a separate merits question, and will be discussed *infra*.

Plaintiffs also have Article III standing to pursue their procedural due process claim and their state-law claim for libel *per se*.[1] As for their due process claim, plaintiffs allege concrete reputational and economic injuries attributable to defendants' conduct. *See* Compl. ¶¶ 619–35. Those alleged injuries are sufficient to satisfy Article III's injury in fact requirement. As for their libel claim, plaintiffs allege that, as a result of defendants' actions, "Bowman has been permanently damaged in his law-abiding reputation in his community and his business, and with licensing

[1] Although defendants do not separately challenge plaintiffs' standing to pursue their procedural due process claim, the Court has an independent obligation to assure itself of Article III jurisdiction. *See Hu v. City of N.Y.*, 927 F.3d 81, 89 (2d Cir. 2019) ("[W]e must always address questions of standing, even when neither the parties nor the court below have considered the issue.").

offices and agencies and oversight bodies" and that "ordinary, law-abiding citizens, customers, and (in particular) law enforcement customers [have been] permanently deterred from associating with him or conducting business with him or at his shop." Compl. ¶ 634. Reputational harm of the sort traditionally associated with defamation is a concrete injury for purposes of Article III. *See TransUnion LLC*, 594 U.S. at 425. Accordingly, plaintiffs have alleged concrete harm sufficient to confer standing as to their libel *per se* claim.

Plaintiffs' Second Amendment claim, however, is differently situated. Bowman does not allege that defendants have prevented him from possessing, carrying, purchasing, or otherwise using firearms. To the contrary, the complaint alleges that he continues to possess his firearms licenses and retains "the ability to lawfully engage in Second Amendment core function and related activity." Compl. ¶ 29. Nor does the complaint allege that any defendant has suspended or revoked his licenses or otherwise subjected him to a present legal disability affecting his possession or use of firearms.

Plaintiffs instead appear to allege that defendants seek ultimately to "mak[e] [Bowman] a disqualified person at federal law," *id.* ¶ 662, or "convert an ordinary, law-abiding citizen into a federally-disqualified person," *id.* ¶ 664. But an injury that depends upon contingent future events is insufficient to establish an actual or imminent injury in fact. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Accordingly, Bowman has not plausibly alleged an injury in fact sufficient to confer standing on his Second Amendment claim. Nor has Bowman's Gun Shop plausibly alleged an independent injury to any Second Amendment right, which protects the *individual* right to keep and bear arms. *See Gazzola v. Hochul*, 645 F. Supp. 3d 37, 64 (N.D.N.Y. 2022), *aff'd*, 88 F.4th 186 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2659 (2024). Accordingly, plaintiffs' Second Amendment claims will be dismissed.

**B. Abstention**

Next, defendants argue that, even if plaintiffs have standing as to one or more claims, this Court can and should abstain from exercising jurisdiction over them because plaintiffs' federal court complaint is, in effect, a collateral attack on the ongoing state court proceeding in *Bowman II*. Defs.' Mem. at 12–19. Defendants offer two abstention theories in support of this argument: the *Younger v. Harris*, 401 U.S. 37 (1971) doctrine, and the *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) doctrine. *Id.* The Court considers each in turn.

**1. *Younger* Abstention**

"'The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction.'" *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Woodford v. Cnty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)). "The *Younger* abstention doctrine embodies the 'longstanding public policy against federal court interference with state court proceedings.'" *Gristina v. Merchan*, 131 F.4th 82, 86 (2d Cir. 2025) (quoting *Younger*, 401 U.S. at 43), *cert. denied*, ––– U.S. ––––, 146 S. Ct. 248, 223 L.Ed.2d 90 (2025).

"Though '[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction,' 'there are some classes of cases in which the withholding of authorized equitable relief[,] because of undue interference with state proceedings[,] is the normal thing to do.'" *Id.* (first quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013); and then quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*")). The doctrine "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." *Schlagler v. Phillips*, 166 F.3d 439, 442 (2d Cir. 1999).

"*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc.*, 571 U.S. at 72. As relevant here, the Supreme Court "has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions." *Id.* "Such enforcement actions are characteristically initiated to sanction . . . the party challenging the state action, for some wrongful act." *Id.* at 79.

Here, the relevant state court proceeding, *Bowman II*, fits comfortably within the "state civil proceedings that are akin to criminal prosecutions" category. The OAG commenced that proceeding against Bowman and Bowman's Gun Shop following an investigation into their alleged noncompliance with New York firearms requirements. *See Sprint*, 571 U.S. at 79 ("In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action."). That investigation included subpoenas, questioning of Bowman, and efforts to resolve the alleged violations through an Assurance. *See id.* at 79–80 ("Investigations are commonly involved, often culminating in the filing of a formal complaint or charges,"). The OAG then brought a state action under Executive Law § 63(12) and GBL §§ 898-a and 875-a to remedy alleged statutory violations by plaintiffs. *See Bowman II*, Dkt. No. 1. At bottom, *Bowman II* is "more akin to a criminal prosecution than are most civil cases." *Id.* at 81 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

Plaintiffs attempt to fight this conclusion by insisting that *Bowman II* is not a civil-enforcement proceeding because it is "not an enforcement proceeding of a prior order[,]" but rather, a "novel, limited, special proceeding." Dkt. No. 36-2 ("Pls.' Opp.") at 12. But this argument misreads *Sprint*. As this Court previously noted, *Bowman II* is most fairly characterized

as a "state-court civil proceeding brought by a state on behalf of its citizens under a state-court business-practices statute[.]" *Bowman's Gun Shop, LLC*, 821 F. Supp. 3d at 252.

And, in any event, a state civil-enforcement proceeding need not enforce a preexisting judgment or order to fall within *Younger*'s reach. Rather, *Sprint* separately recognizes civil actions brought to sanction alleged violations of law as a category of proceedings sufficiently analogous to criminal prosecutions to warrant abstention. *See Sprint Commc'ns, Inc.*, 571 U.S. at 79–80; *see also Trainor v. Hernandez*, 431 U.S. 434, 443 (1977) ("[T]he 'more vital consideration of comity' . . . counsel[s] restraint as strongly in the context of [a] pending state civil enforcement action as in the context of a pending criminal proceeding.") (quoting *Huffman*, 420 U.S. at 604).

Plaintiffs' own opposition acknowledges that *Bowman II* was brought by the OAG against them and challenges the legal basis for the State's attempt to impose civil liability for alleged violations of GBL § 875 and related provisions. Whether that enforcement theory is novel is beside the point for purposes of classifying the proceeding under *Sprint*. Accordingly, *Bowman II* qualifies as a civil-enforcement proceeding within the class of proceedings to which *Younger* applies.

Where, as here, an ongoing state civil-enforcement proceeding falls within *Younger*'s ambit, the Supreme Court has identified three factors for courts to consider prior to invoking the doctrine and abstaining from jurisdiction. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). In *Middlesex*, the Supreme Court invoked *Younger* to bar a federal court from hearing a lawyer's challenge to an ongoing state disciplinary proceeding after it determined that there was (1) "an ongoing state judicial proceeding"; (2) that "implicate[d] important state interests"; and (3) provided "an adequate opportunity . . . to raise constitutional challenges." *Id.* at 432. To be sure, "these conditions '[are] not dispositive; they [are], instead,

additional factors appropriately considered by the federal court before invoking *Younger*.'" *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (quoting *Sprint Commc'ns, Inc.*, 571 U.S. at 81).

Here, all three factors weigh in favor of abstention. The first factor counsels in favor of abstention because there is an ongoing state judicial proceeding. *See Bowman II*, Dkt. No. 98 (explaining that the OAG's petition "is now considered fully submitted and is pending decision").

The second factor, *i.e.*, whether the ongoing proceeding implicates an important state interest, likewise supports abstention. "In determining the substantiality of the state's interest in its proceedings, a court must 'not look narrowly to [the state's] interest in the *outcome* of the particular case,' but rather, to 'the importance of the generic proceedings to the state.'" *Sendlewski v. Town of Southampton*, 734 F. Supp. 586, 591 (E.D.N.Y. 1990) (quoting *NOPSI*, 491 U.S. at 365 (emphasis in original)).

Viewed at the appropriate level of generality, *Bowman II* implicates New York's substantial interest in regulating firearms dealers and enforcing state laws governing the safe storage and sale of firearms. *See, e.g., Gazzola v. Hochul*, 88 F.4th 186, 192, 195–98 (2d Cir. 2023) (affirming denial of preliminary injunction challenging New York regulations governing firearms dealers, including because plaintiffs failed to establish that the regulations burdened their customers' Second Amendment rights). That interest is plainly sufficient for purposes of *Younger*. Accordingly, the second factor supports abstention.

The third factor asks whether the ongoing state court proceeding offers an adequate opportunity for plaintiffs to raise their constitutional challenges. "[A]bstention is appropriate where the plaintiff has an 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit." *Spargo v. N.Y. State Comm'n on*

*Jud. Conduct*, 351 F.3d 65, 77 (2d Cir. 2003) (quoting *Middlesex Ethics Comm.*, 457 U.S. at 437). Importantly, "any uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention." *Spargo*, 351 F.3d at 77–78. Thus, to avoid abstention, "[a party] must demonstrate that state law bars the effective consideration of their constitutional claims." *Id.* at 78.

Plaintiffs have not met their burden as to the third factor. Plaintiffs appear to principally respond that the state proceeding does not include every defendant named in this federal action and cannot afford every form of relief requested here. *See* Pls.' Opp. at 4–5. In particular, they appear to argue that the state court cannot adjudicate claims against all four defendants or address every grievance concerning the press release and related conduct. But that is not the relevant inquiry.

The third *Middlesex* factor does not require that the state proceedings mirror the federal action, include identical parties, or provide every remedy available in federal court. *See Spargo*, 351 F.3d at 81 ("'In determining whether the state remedies are adequate . . . the relevant question is not whether the state courts can do all that [p]laintiffs wish' but rather whether plaintiffs may pursue their federal claims in state proceedings") (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1279 (11th Cir. 2003)). And under New York law, plaintiffs *can* raise their constitutional challenges to the enforcement action in *Bowman II* by seeking dismissal of the petition on that basis. *See, e.g., People v. Trump*, 2025 N.Y. Slip Op. 04756, at *24 (1st Dep't Aug. 21, 2025) (considering constitutional objections asserted in an Executive Law § 63(12) enforcement action).

Nor have plaintiffs demonstrated that any recognized exception to *Younger* applies. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198–201 (2d Cir. 2002) (explaining that the bad faith exception to *Younger* requires a showing that the state proceeding was initiated with

a "retaliatory, harassing, or other[wise] illegitimate motive" and without a "reasonable expectation of obtaining a favorable outcome," while the extraordinary circumstances exception requires circumstances rendering the state court incapable of fairly and fully adjudicating the federal issues). Although the complaint often *characterizes* defendants' conduct as retaliatory, coercive, and undertaken in bad faith, those conclusory allegations do not establish the sort of bad faith or extraordinary circumstances necessary to overcome *Younger*.

Accordingly, the Court will abstain under *Younger* from adjudicating plaintiffs' claims for declaratory and injunctive relief to the extent those claims would require this Court to interfere with the matters presently at issue in *Bowman II*.

Plaintiffs' claims for monetary relief are somewhat differently situated. The Second Circuit has recognized that "it is less likely that unacceptable interference with the ongoing state proceeding" would occur when a party seeks money damages instead of injunctive or declaratory relief. *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). For that reason, "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and [a court] would dismiss otherwise identical claims for declaratory and injunctive relief." *Id.*; *see also Deakins v. Monaghan*, 484 U.S. 193, 202–03 (1988). Ordinarily, therefore, a court that abstains from adjudicating equitable claims under *Younger* may stay the related damages claims pending resolution of the state proceeding rather than dismiss them. *Kirschner*, 225 F.3d at 238.

However, federal district courts are "not required to stay a federal action for monetary damages where the 'claims for damages plainly fail.'" *Winkler v. Rosa*, 2026 WL 2569342, at *7 (N.D.N.Y. Aug. 31, 2026) (D'Agostino, J.) (quoting *Bukowski v. Spinner*, 709 F. App'x 87, 88 (2d Cir. 2018) (summary order)). Here, plaintiffs seek—among other forms of injunctive and

declaratory relief—monetary damages as to all defendants and punitive damages as to defendants AG James and the OAG. *See* Compl. at 169. For the reasons discussed below, plaintiffs' remaining damages claims plainly fail: the OAG and NYSP are immune from suit for money damages under the Eleventh Amendment and are not "persons" subject to liability under § 1983; AG James and the NYSP Superintendent are likewise immune from money damages in their official capacities; and the complaint does not plausibly allege that either official personally participated in a violation of plaintiffs' constitutional rights.

**2. *Colorado River* Abstention**

Before discussing the merits of plaintiffs' remaining money damages claims, the Court briefly addresses defendants' alternative abstention argument. Because the Court concludes that *Younger* mandates abstention as to plaintiffs' claims for declaratory and injunctive relief, it need not separately consider whether abstention as to those claims would be appropriate under the *Colorado River* doctrine. *See Jagoda v. City of Saratoga Springs*, 819 F. Supp. 3d 116, 126 (N.D.N.Y. 2025). As to plaintiffs' claims for monetary damages, *Colorado River* abstention would require a separate determination that the state and federal proceedings are sufficiently parallel and that exceptional circumstances warrant the surrender of federal jurisdiction, issues the Court need not reach here. *See Mochary v. Bergstein*, 42 F.4th 80, 85–86 (2d Cir. 2022).

**C. Eleventh Amendment Immunity**

The Court next considers whether plaintiffs' remaining § 1983 claims for monetary relief may proceed notwithstanding defendants' assertion of Eleventh Amendment immunity. *See* Defs.' Mem. at 23–26. The OAG and the NYSP are arms of the State entitled to Eleventh Amendment immunity from suits for damages in federal court. *See Giordani v. U.S. Dep't of Justice*, 2022 WL 17488494, at *6 (E.D.N.Y. Dec. 7, 2022); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,*

*Inc.*, 506 U.S. 139, 146 (1993) (explaining that suits against states and their agencies are barred by the Eleventh Amendment "regardless of the relief sought"). The same is true of plaintiffs' damages claims against AG James and the NYSP Superintendent in their official capacities. See *Wells v. Harper*, 2026 WL 89965, at *8 (N.D.N.Y. Jan. 13, 2026); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under § 1983] for money damages against state officials in their official capacities."). And because neither the State nor its agencies are "persons" subject to suit under § 1983, plaintiffs' request for punitive damages against the OAG necessarily fails as well. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Plaintiffs nonetheless argue that the complaint "alleges an ongoing violation of federal law" and seeks prospective relief and, for those reasons, the *Ex parte Young* exception applies. *See* 209 U.S. 123 (1908). Under that doctrine, the Eleventh Amendment does not bar suits against state officials in their official capacities for prospective injunctive or declaratory relief designed to remedy an ongoing violation of federal law. *See id.* at 155–56; *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The exception does not, however, permit claims for retrospective relief or authorize damages payable from the state treasury. *See Green v. Mansour*, 474 U.S. 64, 68 (1985).

Here, plaintiffs seek prospective relief against AG James and the NYSP Superintendent in their official capacities. As explained above, the Court abstains under *Younger* from adjudicating plaintiffs' claims for declaratory and injunctive relief insofar as they would interfere with the ongoing state enforcement proceeding. Accordingly, the *Ex parte Young* exception does not preserve any official capacity claim that remains for adjudication.

However, even if *Younger* did not independently bar plaintiffs' claims for declaratory and injunctive relief, plaintiffs' claims would still not fit into the *Ex parte Young* exception. That exception permits official capacity suits only where a plaintiff alleges an ongoing violation of federal law and seeks prospective relief designed to end that violation. *See T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 87, 93, 95 (2d Cir. 2024). A plaintiff seeking prospective relief therefore "cannot rely on past injury" but must plausibly allege a real and immediate threat of future harm. *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

Plaintiffs have not made that showing. Here, plaintiffs purport to "request injunctive relief to prevent delinquent regulations from publishing in the future and from use of any mischaracterized 'inspection' information for future enforcement purposes" and to "stop the ongoing publication of the Press Release and pleading, and to prevent future publicity, a retraction as mitigation against on-going damages, and the appointment of a monitor to certify presentation of new filings." Pls.' Opp. at 24.

But plaintiffs' claims principally arise from completed conduct, including the October 2023 NYSP visit, the OAG's investigation, and the July 18, 2025, press release. The fact that the press release remains publicly available does not convert its original publication into an ongoing violation of federal law. Nor do plaintiffs plausibly allege that either AG James or the NYSP Superintendent is presently enforcing an unconstitutional policy against them or that either official is threatening some imminent future constitutional injury.

Plaintiffs' remaining requests for prospective relief fare no better. Their concern that NYSP may rely on allegedly inaccurate inspection information in some future enforcement action, or that defendants may engage in similar publicity in the future, rests on contingent events that may never occur. Likewise, a compelled retraction would operate principally to remedy the

alleged effects of a past publication rather than to halt an ongoing violation of federal law. And plaintiffs' request for the appointment of a monitor to oversee future filings does not identify any continuing federal violation that such relief would redress.

Accordingly, plaintiffs' claims for monetary damages against the OAG and NYSP, as well as against AG James and the NYSP Superintendent in their official capacities, must be dismissed on Eleventh Amendment immunity grounds. Plaintiffs' § 1983 claim for punitive damages against the OAG must likewise be dismissed.

**D. Plaintiffs' § 1983 Claims**

The Court next turns to whether plaintiffs have plausibly alleged a basis for individual capacity liability against AG James and the NYSP Superintendent under § 1983. Section 1983 requires each defendant's personal involvement in an alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quotation marks omitted). "[A] plaintiff may not rely on a special test for supervisory liability. Rather, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft*, 556 U.S. at 676). For the reasons explained below, plaintiffs' complaint fails to plausibly state a basis for damages against either AG James or the NYSP Superintendent in their individual capacities.

**1. The NYSP Superintendent**

Plaintiffs' allegations against the NYSP Superintendent are insufficient to establish his personal involvement in any alleged constitutional deprivation. The complaint principally identifies his position, describes the statutory duties of the Superintendent, and attributes the

conduct of unidentified NYSP officers to the agency generally. *See* Compl. ¶¶ 71–75, 473–77. Although plaintiffs allege that NYSP officers conducted visits to firearms dealers, distributed compliance checklists, and made statements concerning the purpose and scope of those visits, they do not allege that the NYSP Superintendent personally took any individualized action with respect to plaintiffs. Nor is it enough to allege, in conclusory fashion, that the conduct occurred as part of a statewide policy or under the NYSP Superintendent's general authority. *See Tangreti*, 983 F.3d at 616. Because the complaint does not plausibly allege the NYSP Superintendent's personal involvement in any constitutional deprivation, plaintiffs' § 1983 claims against him in his individual capacity must be dismissed.

**2. AG James**

Plaintiffs' allegations concerning AG James fare little better. To be sure, the complaint attributes the July 18, 2025, press release to AG James and alleges that it contained a quotation from her. Compl. ¶¶ 121–22. But plaintiffs otherwise rely largely on allegations that Assistant Attorneys General acted "under the direction" of AG James, *id.* ¶¶ 35, 69, or refer collectively to the "NY Attorney General and her Assistant NY Attorneys General" in describing the investigation and ensuing enforcement proceedings, *see, e.g., id.* ¶¶ 726–29, 757–60.

For example, one of the complaint's more pointed allegations asserts that "New York Attorney General Letitia James and her group of Assistant NY Attorneys General then gathered their forces and wielded their power" by issuing the press release, which plaintiffs allege was intended "to defame Mr. Bowman in his profession," "drive away business," and ultimately "strip [Bowman] of his fundamental Second Amendment rights." Compl. ¶ 729. But such collective and conclusory allegations do not plausibly identify what AG James herself did—apart from her alleged participation in issuing the press release—that caused a constitutional deprivation.

Even assuming that AG James's alleged participation in issuing the press release amounts to her personal involvement, plaintiffs' allegations still do not support a claim for constitutional damages. Plaintiffs principally allege that defendants "violated Mr. Bowman's First Amendment Free Speech Clause rights, as guaranteed to him against state actors through the Fourteenth Amendment Equal Protection Clause, for punishing and suppressing his pro-Second Amendment viewpoint and core political speech[.]" Compl. ¶ 707.

Although the complaint extensively describes Bowman's personal views concerning the Second Amendment and his communications with government officials, it does not plead nonconclusory facts supporting a reasonable inference that AG James issued the press release *because* Bowman engaged in that protected activity. *See Dorsett*, 732 F.3d at 160 (requiring protected speech, adverse action, and a causal connection between the two). Plaintiffs' conclusory characterization of the press release as punishment for Bowman's protected speech is therefore insufficient to make out a First Amendment retaliation claim against AG James.

Plaintiffs' reliance on *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), does not alter that conclusion. *See* Pls.' Opp. at 36–37. Plaintiffs argue that the press release and surrounding enforcement activity operated as a form of informal censorship analogous to the coercive scheme struck down in *Bantam Books*. *See* Compl. ¶¶ 732–37.

This argument is unavailing. *Bantam Books* involved government officials who used threats of prosecution and other coercive pressure against third-party distributors to suppress the circulation of disfavored publications. *See* 372 U.S. at 66–72; *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190–91 (2024) ("*Bantam Books* stands for the principle that a government official cannot do indirectly what she is barred from doing directly: A government official cannot coerce a private party to punish or suppress disfavored speech on her behalf.").

Here, by contrast, plaintiffs do not plausibly allege that AG James threatened or coerced any third party to suppress Bowman's speech, nor do they identify any directive from AG James requiring Bowman himself to stop speaking. Their allegations instead concern the OAG's own speech in the form of a press release and the commencement of an enforcement proceeding authorized by state law. However sharply plaintiffs might disagree with the actions at issue, *Bantam Books* does not transform them into unconstitutional censorship. Accordingly, plaintiffs have not plausibly alleged a First Amendment claim against AG James in her individual capacity.

Finally, alleged reputational injury standing alone does not amount to a deprivation of liberty or property protected by the Due Process Clause. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation, however, is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."). At most, plaintiffs allege reputational and economic injuries arising from the publication of allegedly false statements, which, without more, do not establish a violation of the First or Fourteenth Amendment.

In sum, plaintiffs' complaint does not plausibly allege that either named official personally participated in conduct that deprived plaintiffs of a constitutional right. *Winkler*, 2026 WL 2569342, at *7 (declining to stay a federal action for monetary damages where the complaint failed to allege defendants' personal involvement). For that reason, plaintiffs' damages claims plainly fail.

Finally, because plaintiffs' damages claims either are barred by sovereign immunity or fail to state a viable claim against the individual defendants, there is no reason to stay those claims pending resolution of *Bowman II*. Consequently, the Court need not reach defendants' alternative qualified immunity arguments.

### E. Libel *Per Se*

Having dismissed plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state-law claim for libel *per se*. *See* 28 U.S.C. § 1367(c)(3). That claim will therefore be dismissed without prejudice.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss (Dkt. No. 24) is **GRANTED**;

2. Plaintiffs' Second Amendment claim is **DISMISSED** without prejudice for lack of standing;

3. Plaintiffs' claims for declaratory and injunctive relief against Attorney General James and the New York State Police Superintendent in their official capacities are **DISMISSED** without prejudice pursuant to *Younger v. Harris*, 401 U.S. 37 (1971);

4. Plaintiffs' federal claims against the Office of the New York Attorney General and the Division of New York State Police, and plaintiffs' claims for monetary damages against Attorney General James and the New York State Police Superintendent in their official capacities, are **DISMISSED** without prejudice as barred by the Eleventh Amendment;

5. Plaintiffs' claims under 42 U.S.C. § 1983 for monetary damages against Attorney General James and the New York State Police Superintendent in their individual capacities are **DISMISSED** for failure to state a claim;

6. Plaintiffs' state-law claim for libel *per se* is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

The Clerk of the Court is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated: November 16, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge